UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLAVIO DE MORAIS,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES,<br><br>    Respondent. | Case No. 10-cr-00557-WHO-1<br><br>**ORDER ON MOTION TO VACATE CONVICTION**<br><br>Dkt. Nos. 64, 71 |

## INTRODUCTION

In 2010, petitioner Flavio de Morais, a citizen of Brazil, pleaded guilty to one count of mail fraud in violation of 18 U.S.C. § 1341 and was sentenced to three years probation and $161,149 in restitution. This plea allows the government to institute removal proceedings to deport De Morais, a fate De Morais wished at all costs to avoid. He now moves to vacate his conviction under 28 U.S.C. § 2255 because he received ineffective assistance of counsel.

De Morais's guilt is beyond question: the issue is whether the outcome of the plea process would have been different if his attorney had provided competent advice regarding the immigration consequences of his guilty plea. The government argues that De Morais was not prejudiced by the advice he received and asks that I deny the motion. To the contrary, I find it reasonably probable on the record before me that plea negotiations correctly informed about the immigration consequences of pleading guilty to mail fraud would have resulted in a better outcome for De Morais. This case will proceed as outlined below.

## BACKGROUND

De Morais was born in Brazil. De Morais Decl. ¶ 5 (Dkt. No. 64-1). He entered the United States lawfully in 2001, at the age of eighteen, and has lived in this country ever since. *Id.* ¶¶ 3, 5. He is a lawful permanent resident and is married to a United States citizen. *Id.*; Reply

1-2.

In or around 2004, De Morais began working for a real estate business known as the Pan American Funding Group ("Pan American"). De Morais Decl. ¶ 7. Pan American was run by a Brazilian woman who was interested in De Morais as an employee because he, like many of her clients, spoke Portuguese. *Id.* As part of his work for Pan American, De Morais submitted real estate loan applications supported by fake documentation and other falsified data. *Id.* ¶¶ 7-8. In 2006, the same year he was granted lawful permanent resident status, De Morais left Pan American. *Id.* ¶¶ 5, 9. He states that he left "because [he] could no longer bring [him]self to do those dishonest things, and because [he] knew that at some point they would get caught." *Id.* ¶ 9.

De Morais was arrested by FBI agents on February 9, 2010. De Morais Decl. ¶ 10. He was told he had the right to remain silent and to an attorney, but he "admitted to everything [he] had done and told [the agents] everything [he] knew about the illegal activities which [he] had witnessed and in which [he] had participated." *Id.* ¶ 10; *see also* Weber Decl. ¶¶ 5-7 (Dkt. No. 70).[1] The same day he was arrested, De Morais called a former Pan American associate on behalf of the FBI in an effort to obtain documents that would aid in the government's investigation. De Morais Decl. ¶ 10.

On July 20, 2010, the government filed a felony information charging De Morais with one count of mail fraud in violation of 18 U.S.C. § 1341. Dkt. No. 23. The information alleges that in November 2005 De Morais

> did knowingly and intentionally devise and participate in a material scheme and artifice to defraud, and to obtain money and property from, the mortgage lender WMC Mortgage Corporation ("WMC"), by means of materially false and fraudulent pretenses, representations, and promises, and by material omissions, namely, by knowingly and intentionally submitting false and fraudulent

---

[1] FBI Special Agent Brian Weber states that De Morais "verbally consented to be interviewed at the time of his arrest" and also signed an FBI "Advice of Rights" form "consenting to be interviewed without a lawyer present." Weber Decl. ¶ 5. De Morais then admitted, among other things, that he: (1) "purchased fraudulent income documents . . . to submit to mortgage lenders in support of loan applications;" (2) paid a tax preparer "to prepare fraudulent tax returns for inclusion in loan files that were submitted to mortgage lender in support of loan applications;" (3) "paid other individuals to fabricate 'Verification of Rent' forms to submit to mortgage lenders;" and (4) "paid bank employees to fabricate 'Verification of Deposit' forms that falsely inflated the amount of money that the borrowers had on deposit at the banks." *Id.* ¶ 6.

*United States District Court  
Northern District of California*

> information to WMC to obtain mortgage loans for the borrower "M.G.," and, for the purpose of executing such scheme and artifice, did knowingly and intentionally cause certain matters and things to be delivered by the United States Postal Service according to the direction thereon, specifically, a grant deed and deeds of trust relating to real property located on the 800 Block of 15th Street in Richmond, California.

*Id.* De Morais acknowledges that WMC "lost well over $100,000" in connection with the underlying mortgage loans. *Id.* ¶ 14.[2]

De Morais retained Hugh Levine as defense counsel. De Morais Decl. ¶ 11. Levine told De Morais that he "knew the prosecutor and would be able to get a good deal." *Id.* When Levine learned that De Morais was not a United States citizen, he advised him to find an immigration attorney. *Id.* ¶ 12. De Morais subsequently retained Stephen Eckdish for this purpose. *Id.*

After consulting with Eckdish, Levine told De Morais that he could avoid deportation even if convicted of mail fraud. De Morais Decl. ¶ 13. Levine stated that so long as the court did not order restitution in an amount greater than $10,000, De Morais's immigration status would remain secure. *Id.* Levine advised De Morais to plead guilty to the mail fraud count and to cooperate with the government; in the meantime, Levine would attempt to convince the prosecutor to limit the restitution amount to $10,000 or less, or to allow De Morais to change his plea to another immigration-safe offense. *Id.* Levine "assured De Morais that he would get [him] a good deal, one that protected [his] immigration status." *Id.* On August 5, 2010, based on Levine's advice, De Morais pleaded guilty to mail fraud. Dkt. No. 30.

Sentencing was delayed for over a year while De Morais assisted the government in its investigations and prosecutions in several other cases involving people he had worked with at or through Pan American. De Morais Decl. ¶¶ 15-16. He also worked on a number of white collar crime cases that were unrelated to Pan American, including by participating in surreptitiously recorded telephone conversations and meetings and other undercover activities. *Id.* Based in part on De Morais's cooperation, the government was able to successfully prosecute several of De

---

[2] Special Agent Weber states that "WMC provided a 'first' and a 'second' mortgage loan to M.G. The first was in the amount of $382,848, and the second was in the amount of $71,784." Weber Decl. ¶ 12. At sentencing, De Morais was ordered to pay $161,149 in restitution to Bank of America. Sent. Tr. 22 (Dkt. No. 55); Dkt. No. 48.

Morais's former associates for crimes committed either at or in connection with Pan American. *Id.*

As sentencing approached, Levine informed De Morais that he had been unable to negotiate a limited restitution amount or a change of plea. De Morais Decl. ¶ 17. For the first time, Levine indicated that the amount of restitution ordered could exceed $10,000, and that De Morais's immigration status was in jeopardy. *Id.* De Morais told Levine that he "never would have agreed to plead guilty to the charged crime if [he] had known that [he] would be deported as a result," and that he would "accept an actual prison sentence if that would satisfy the prosecution and prevent [his] deportation." *Id.* Levine recommended that De Morais borrow $300,000 and pay off any losses to avoid any restitution order. *Id.* That way, Levine told De Morais, he would not face deportation as a result of his conviction. *Id.*

At the sentencing hearing, Levine asked that the restitution amount be limited to $10,000 or less so that De Morais would not be threatened with deportation. Sent. Tr. 8 ("[I]f it is shown that the loss exceeded $10,000 and [De Morais is] ordered to pay restitution in . . . excess of $10,000, he can be immediately deported as having been convicted of an aggravated felony."). Judge Ware disagreed and ordered $161,149 in restitution. Sent. Tr. 22; Dkt. No. 48 at 4. However, he sentenced De Morais to only three-years' probation, significantly less than the maximum sentence of 30 years imprisonment and $1 million dollar fine, and less than the government's proposed eight-months' home detention in addition to probation. *See* Sent. Tr. 5; Dkt. No. 48 at 4. He also stated on the record that he was "impressed with the degree of [De Morais's] cooperation," and that De Morais's "assistance to the government has shown commendable citizenship." Sent. Tr. 18, 23. Judge Ware indicated that he would recommend to the immigration authorities that De Morais not be deported. Sent. Tr. 23 ("It is my recommendation that you not be deported. And I'll ask the Clerk of the Court to make sure that your immigration attorney is advised of that recommendation [and that] the Court offers its assistance to make sure the immigration authorities . . . are made aware of the Court's

recommendation.").[3]

Believing that the restitution amount determined his immigration status, De Morais appealed only the restitution portion of his sentence to the Ninth Circuit.[4] De Morais Decl. ¶ 19. The appeal was unsuccessful. *See United States v. De Morais*, 488 F. Appx. 246 (9th Cir. 2012). On January 31, 2014, De Morais filed this motion to vacate his conviction under 28 U.S.C. § 2255. De Morais claims that Levine provided ineffective assistance of counsel by misadvising him on the immigration consequences of his guilty plea.[5]

## LEGAL STANDARD

### I.   28 U.S.C. § 2255

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id.* If the court finds that relief is warranted, it must vacate and set aside the judgment, and then do one of four things: (1) discharge the prisoner, (2) resentence him, (3) grant a new trial, or (4) "correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).

---

[3] It appears that Judge Ware was attempting to grant a judicial recommendation against deportation, a procedure which at one time gave a "sentencing judge conclusive authority to decide whether a particular conviction should be disregarded as a basis for deportation." *Padilla v. Kentucky*, 559 U.S. 356, 361-62 (2010) (internal quotation marks omitted). Congress substantially circumscribed the procedure in 1952 and completely eliminated it in 1990. *Id.* at 363.

[4] Levine declined to represent De Morais in his appeal to the Ninth Circuit. De Morais Decl. ¶ 19. De Morais retained another attorney, Kenneth Wine, to litigate the appeal. *Id.*

[5] The government noted in its opposition that certain declarations submitted by De Morais in conjunction with his motion had not been signed by the declarants, and that one of those declarations appeared to be missing an exhibit. Opp. 20-21. The government requested that De Morais submit signed versions of the declarations, as well as the missing exhibit, for the purpose of "complet[ing] the record." *Id.* De Morais submitted signed versions of the declarations and the missing exhibit in conjunction with his reply. Dkt. Nos. 76, 78.

A district court "must grant a hearing to determine the validity of a petition brought under [section 2255] unless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (internal quotation marks omitted). In deciding whether to grant an evidentiary hearing, the district should determine whether, accepting the truth of the petitioner's factual allegations, he could prevail on his claim. *Id.* An evidentiary hearing is thus required where the petitioner "allege[s] specific facts, which, if true, would entitle him to relief," and the record "cannot conclusively show that the petitioner is entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). "Evidentiary hearings are particularly appropriate when claims raise facts which occurred out of the courtroom and off the record." *United States v. Chacon-Palomares*, 208 F.3d 1157, 1159 (9th Cir. 2000) (internal quotation marks omitted).

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). This right "extends to the plea-bargaining process." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). A petitioner claiming ineffective assistance of counsel must show two things: (1) deficient performance; and (2) prejudice. *Strickland*, 466 U.S. at 687-88.

Deficient performance requires a showing that counsel's representation fell below an "objective standard of reasonableness," as measured by prevailing professional norms. *Strickland*, 466 U.S. at 687-88. To determine whether a lawyer's practices met prevailing professional norms, the court must look to "the standard practices in the relevant area at the time of representation." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011). Review of counsel's actions is highly deferential, as there is "a strong presumption that [his] representation was within the wide range of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted). It is the petitioner's burden to show that his attorney "made errors so serious that [he] was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

As a general matter, a petitioner seeking to establish prejudice must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is "sufficient to undermine confidence in the outcome of the proceeding." *Id.* Under this standard, the likelihood of a different result must be "substantial, not just conceivable." *Cullen*, 131 S. Ct. at 1403 (internal quotation marks omitted).

A petitioner seeking to establish prejudice in the plea-bargaining context must show that "the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384. In some plea-bargaining cases, this standard requires the petitioner to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Insistence on going to trial "does not, however, provide the sole means for demonstrating prejudice arising from the deficient performance of counsel during plea negotiations." *Missouri v. Frye*, 132 S. Ct. 1399, 1409-10 (2012). Depending on the circumstances of the case, the *Strickland* inquiry into whether the result of the proceeding would have been different may also focus on the reasonable probability of other counterfactuals. *See id.* (where deficient performance consists of counsel's failure to communicate a plea offer, establishing prejudice requires defendants to demonstrate that "they would have accepted the earlier plea offer," that the earlier plea offer "would have been entered without the prosecution canceling it or the trial court refusing to accept it," and that "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time"); *Lafler*, 132 S. Ct. at 1384-85 (where deficient performance causes defendant to reject a plea offer, establishing prejudice requires a showing that defendant would have accepted the offer, that it "would have been presented to the court," that "the court would have accepted its terms," and that "the conviction or sentence . . . would have been less severe than under the judgment and sentence that in fact were imposed").

Where, as here, the petitioner seeks to establish prejudice resulting from incompetent advice regarding the immigration consequences of a plea bargain, he must also "convince the court that a decision to reject the plea bargain would have been rational under the circumstances."

7

*Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *see also United States v. Lozano*, 540 F. Appx. 793, 794 (9th Cir. 2013) ("The district court properly denied [petitioner's section 2255 motion] because he cannot demonstrate prejudice . . . [H]e has not shown that a decision to reject the plea bargain would have been rational under the circumstances.") (internal quotation marks omitted).

## DISCUSSION

### I.  DE MORAIS'S MOTION TO VACATE UNDER 28 U.S.C. § 2255

De Morais's ineffective assistance of counsel claim is supported by specific facts which, if true, would warrant relief, and the record does not conclusively show that his claim is without merit. Accordingly, his motion may not be dismissed at this time, and this case will proceed as outlined at the conclusion of this order.

#### A.  Deficient Performance

Objectively unreasonable advice regarding the immigration consequences of a plea bargain can constitute deficient performance. *Padilla*, 559 U.S. at 366. In *Padilla v. Kentucky*, the Supreme Court found deficient performance where the immigration consequences of the petitioner's plea "could easily be determined from reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect." 559 U.S. at 369. Those same factors are present here.

The heart of De Morais's deficient performance claim is that Levine misunderstood the immigration consequences of pleading guilty to mail fraud. The ins and outs of immigration law are complex, even for immigration practitioners, and it is clear that Levine tried to achieve the best outcome for De Morais of which he was aware. He knew that deportation was a significant risk. He consulted with an immigration attorney and tried to convince the prosecutor to agree to a disposition that would not include potential deportation. The deficiency identified by De Morais is that Levine did not realize the crime he advised De Morais to plead guilty to carried with it the removal consequence he was seeking to avoid, and that he failed to pursue alternative plea deals that truly would have reduced the likelihood of De Morais's removal.

A conviction for mail fraud, in circumstances like those at issue here, triggers removal. An offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000"

constitutes an "aggravated felony" for immigration law purposes. 8 U.S.C. § 1101(a)(43)(M)(i); *see also Rivas-Marin v. Holder*, 469 F. Appx. 521 (9th Cir. 2012) ("[A]n alien's mail fraud conviction under § 1341 is an aggravated felony under § 1101(a)(43)(M)(i)."). "Any alien who is convicted of an aggravated felony at any time after admission [to the United States] is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).[6]

That makes De Morais's deportation "presumptively mandatory" as a result of his conviction. *Padilla*, 559 U.S. at 369. Under contemporary immigration law, if a noncitizen commits a removable offense, "removal is practically inevitable but for the possible exercise of limited remnants of equitable discretion vested in the Attorney General to cancel removal for noncitizens convicted of particular classes of offenses." *Id.* at 363-64 (citing 8 U.S.C. § 1229b). Subject to limited exceptions, even these "limited remnants" of discretionary relief are unavailable to noncitizens convicted of aggravated felonies. *Id.* In short, "8 U.S.C. § 1227(a)(2)(A)(iii) and 8 U.S.C. § 1101(a)(43)(M)(i) are unambiguous and made [De Morais's] deportation presumptively mandatory as a result of his plea." *United States v. Krboyan*, No. 02-05438, 2011 WL 2117023, at *10 (E.D. Cal. May 27, 2011); *see also United States v. Singh*, 305 F. Supp. 2d 109, 110 (D.D.C. 2004) ("[B]ecause defendant pled guilty to mail fraud involving more than $10,000, which is categorized as an 'aggravated felony' under the immigration laws, he faces absolute, nondiscretionary deportation.").

Levine's advice that De Morais's immigration status would remain secure so long as the court ordered less than $10,000 in restitution was incorrect. The relevant statute plainly states that what matters in determining whether mail fraud constitutes an aggravated felony is the amount of loss to the victim or victims, not the amount of restitution ordered by the sentencing court. *See* 8

---

[6] De Morais's mail fraud conviction also makes him removable under 8 U.S.C. § 1227(a)(2)(A), which provides that "[a]ny alien who . . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and . . . is convicted of a crime for which a sentence of one year or longer may be imposed . . . is deportable." 8 U.S.C. § 1227(a)(2)(A)(i). Because "fraud has consistently been regarded as . . . within the scope of moral turpitude." *Jordan v. De George*, 341 U.S. 223, 229 (1951); *accord Villatoro v. Holder*, 760 F.3d 872, 877 (8th Cir. 2014), the Ninth Circuit has held that mail fraud is a crime of moral turpitude, *see, e.g., Humboldt Oil Co. v. Exxon Co., U.S.A.*, 695 F.2d 386, 389 (9th Cir. 1982) ("Intent to defraud is an element of . . . mail fraud. Crimes in which fraud is an ingredient involve moral turpitude.") (internal citations omitted).

9

U.S.C. § 1101(a)(43)(M)(i). Courts have repeatedly and consistently construed the statute according to this straightforward reading. *See, e.g., Zhang v. United States*, 506 F.3d 162, 168 (2d Cir. 2007) ("[M]ail fraud does not constitute an aggravated felony unless the loss exceeds $10,000."); *Martinez v. Mukasey*, 508 F.3d 255, 260 (5th Cir. 2007) ("In 8 U.S.C. § 1101(a)(43)(M)(i), Congress defined an aggravated felony in terms of loss to the victim, not in terms of the amount the defendant ultimately paid [in restitution]."); *see also Chowdhury v. I.N.S.*, 249 F.3d 970, 973-74 (9th Cir. 2001) ("If Congress intended to link the $10,000 threshold [in 8 U.S.C. 1101(a)(43)(D)] to the victim's losses, it had a clear model of statutory language in another paragraph of the same statute. Section 1101(a)(43)(M) . . . uses the language 'in which the loss to the victim or victims exceeds $10,000.'"). In *Nijhawan v. Holder*, 557 U.S. 29 (2009), the Supreme Court made clear that 8 U.S.C. § 1101(a)(43)(M)(i)'s $10,000 monetary threshold "applies to the specific circumstances surrounding an offender's commission of a fraud and deceit crime on a specific occasion" and may be established by reference to materials "produced for sentencing purposes." *Id.* at 40, 42-43. Levine's apparent assumption that the government would be restricted to the terms of De Morais's restitution order in determining the amount of loss was unfounded and incorrect. *See id.*; *see also Kaplun v. Attorney Gen. of U.S.*, 602 F.3d 260, 265-66 (3d Cir. 2010) (finding $10,000 loss requirement established based on allegations in the criminal information to which the noncitizen pled guilty and in the presentence report); *Polanco-De Los Angeles v. Holder*, 543 F. Appx. 26, 28 (2d Cir. 2013) ("After . . . *Nijhawan*, we have explained on multiple occasions that the [Board of Immigration Appeals] is now permitted to rely on presentence reports in determining the loss amount.") (citing cases).[7, 8]

De Morais's arguments regarding deficient performance are well-supported by his declaration and by that of Norton Tooby, a recognized expert in the criminal defense of immigrants. *See* Tooby Decl. ¶ 12 (Dkt. No. 64). The government cites no evidence contradicting

---

[7] This is not to say that the terms of a restitution order are irrelevant in determining the loss amount for purposes of 8 U.S.C. § 1101(a)(43)(M)(i) – only that, under *Nijhawan*, they are not necessarily dispositive.

[8] Levine's advice was also incorrect because it failed to take into account that mail fraud is a crime involving moral turpitude exposing De Morais to removal under 8 U.S.C. § 1227(a)(2)(A).

1  De Morais's description of Levine's advice, and no authority indicating that Levine's advice, as
2  described by De Morais, was adequate. Indeed, the government does not offer any argument at all
3  with respect to deficient performance, instead focusing its briefing exclusively on prejudice. *See*
4  Opp. 11-20. De Morais has made a sufficient showing of deficient performance.

### B.     Prejudice

De Morais has also made a sufficient showing of prejudice. Based on his declaration and the other materials in the record, there is a reasonable probability that he would have decided against pleading guilty to mail fraud had he been advised of the actual consequences of doing so. He plainly states in his declaration that he would not have agreed to his plea had he understood that it would render him removable, and that he would have preferred to serve time in prison than jeopardize his ability to stay in the country. De Morais Decl. ¶¶ 3 ("Had I known at the time that these terrible immigration consequences would result, I would not have agreed to plead guilty to the charged offense."), 17 ("I told [Levine] that I never would have agreed to plead guilty to the charged crime if I had known that I would be deported as a result, and I offered to accept an actual prison sentence if that would satisfy the prosecution and prevent my deportation.").

The facts of this case corroborate these assertions. By the time De Morais entered his plea, he had been a lawful permanent resident for nearly five years and had spent nearly ten years – the whole of his adult life – in the United States. Shortly after retaining Levine as his attorney, De Morais also retained Eckdish as an immigration consultant, demonstrating that he was particularly concerned about the potential immigration consequences of the charges against him. *See United States v. Kwan*, 407 F.3d 1005, 1017 (9th Cir. 2005) ("That [petitioner] asked counsel about the immigration consequences of pleading guilty before agreeing to do so demonstrates clearly that he placed particular emphasis on immigration consequences in deciding whether or not to plead guilty.") (internal quotation marks omitted). The legal strategy devised by Levine to focus on limiting the restitution amount, while misguided, further establishes that a key concern for De Morais during the plea process – if not the key concern – was preserving his immigration status.

The question then becomes whether a decision by De Morais to reject an offer to plead guilty to mail fraud would have been "rational under the circumstances." *Padilla*, 559 U.S. at 372.

11

The record indicates that it would have been. After rejecting the offer, De Morais could have insisted that Levine do what the Supreme Court urged in *Padilla*: "plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence." *Id.* at 373; *see also United States v. Kwan*, 407 F.3d 1005, 1017-18 (9th Cir. 2005) (finding prejudice where petitioner claimed that "had he been aware of the deportation consequences of his conviction, he would have explored the option of renegotiating his plea agreement," and it was reasonably probable that petitioner would been able to withdraw his plea and then "renegotiat[e] his plea agreement to avoid deportation"); *Song v. United States*, No. 98-00806, 2011 WL 2533184, at *4 (C.D. Cal. June 27, 2011) ("[H]ad the risk of virtually certain removal been communicated to Mr. Song, it is reasonably probable . . . that Mr. Song would have insisted that counsel attempt to negotiate a more immigration-safe plea.").

As Norton Tooby explains in his declaration, one alternative offense to which De Morais could have pled in this case is bank theft, committed with the intent to injure, in violation of 18 U.S.C. § 656.[9] *See* Tooby Decl. ¶¶ 7-10. The Ninth Circuit has held that, because section 656 may be violated with either an intent to defraud or an intent to injure, "there is no 'categorical match' between § 656 and [the] definition of 'aggravated felony' in § 1101(a)(43)(M)(i), because not every conviction under § 656 involves fraud or deceit." *Carlos-Blaza v. Holder*, 611 F.3d 583, 588 (9th Cir. 2010); *see also Valansi v. Ashcroft*, 278 F.3d 203, 211 (3d Cir. 2002) ("[A] conviction may be established under 18 U.S.C. § 656 by proving that the defendant acted with either an intent to injure or an intent to defraud . . . Consequently, some but not all convictions under 18 U.S.C. § 656 qualify as aggravated felonies under 8 U.S.C. § 1101(a)(43)(M)(i).") (emphasis omitted). Given that a section 656 violation is not categorically an aggravated felony under section 1101(a)(43)(M)(i), it is reasonably probable that a plea could have been constructed around the intent to injure element of the offense that would have avoided rendering De Morais deportable for a fraud aggravated felony conviction. *See Descamps v. United States*, 133 S. Ct.

---

[9] There is no indication that section 656 was included in the plea negotiations.

12

2276, 2285 (2013) ("central feature" of both categorical approach and modified categorical approach is "a focus on the elements, rather than the facts, of a crime").

Such a plea also would have avoided triggering removal under 8 U.S.C. § 1101(a)(43)(G), the theft aggravated felony provision, because that provision applies only where the "term of imprisonment" is "at least one year." 8 U.S.C. § 1101(a)(43)(G).[10] The government here sought only eight-months' home detention, and Judge Ware imposed no period of confinement at all. It is possible that the government would have sought a longer period of confinement in exchange for agreeing to a different statute of conviction. But in light of the minimal sentence that Judge Ware actually imposed, and his recommendation that De Morais not be deported as a result of his conviction, I find it reasonably probable that Judge Ware would have declined to order a sentence of one year or more had he been informed of the immigration consequences of doing so.

Finally, a carefully constructed section 656 plea could have avoided triggering removal under 8 U.S.C. § 1227(a)(2)(A), for conviction of a crime involving moral turpitude committed within five years of admission. Unlike an offense requiring the intent to defraud, an offense requiring only the intent to injure does not necessarily involve moral turpitude. *See, e.g., Rodriguez-Herrera v. I.N.S.*, 52 F.3d 238, 239-41 (9th Cir. 1995) (crimes "that are not of the gravest character" ordinarily require an element of fraud to qualify as crimes involving moral turpitude). A theft offense does not necessarily involve moral turpitude either, so long as the offense does not require "an intent to permanently deprive" the property owner. *Alvarez-Reynaga v. Holder*, 596 F.3d 534, 537 (9th Cir. 2010); *Alvarez-Reynaga v. Holder*, 596 F.3d 534, 537 (9th Cir. 2010); *see also Sheikh v. Holder*, 379 F. Appx. 697, 699 (9th Cir. 2010) ("Theft offenses are categorically crimes involving moral turpitude only when the statute of conviction requires the 'base, vile, or depraved' conduct of intending to permanently deprive the property owner.").

The government is correct that fifty years ago, in *Matter of Batten*, 11 I. & N. Dec. 271 (B.I.A. 1965), the Board of Immigration Appeals held that the respondent's section 656 conviction

---

[10] 8 U.S.C. § 1101(a)(48)(B) defines "term of imprisonment" as "the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part." 8 U.S.C. §1101(a)(48)(B).

13

constituted a crime involving moral turpitude. *See id.* at 272-73. But the Board reached that decision only after recognizing that section 656 "may include offenses which do and other[s] which do not involve moral turpitude," and then examining "the record of conviction to determine which portion of the statute was violated." *Id.* If anything, *Matter of Batten* supports De Morais's position – i.e., that section 656 is not categorically a crime involving moral turpitude and could have provided a safe haven from removal under 8 U.S.C. § 1227(a)(2)(A). While the immigration authorities or the Ninth Circuit *could* construe a conviction under section 656 as a crime involving moral turpitude, it appears that, at the very least, a deliberately crafted plea to that statute would have "reduce[d] the likelihood" that De Morais would be deported as a result of his conviction. *Padilla*, 559 U.S. at 373.

The government contends that a plea to section 656 would have been impossible because the facts De Morais's case do not fit within the scope of the statute, meaning that there would not have been a factual basis for the plea as required by Federal Rule of Criminal Procedure 11(b)(3). Opp. 16-17; Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."). Specifically, the government argues that WMC is not a bank of the sort covered by section 656, and that De Morais was not "an officer, director, agent or employee of, or connected in any capacity with any [such bank]." 18 U.S.C. § 656.

I am not persuaded by this argument. In making the Rule 11(b)(3) determination, the court "need not rely on the plea colloquy alone and may conclude that a factual basis exists from anything that appears on the record." *United States v. Mancinas-Flores*, 588 F.3d 677, 682 (9th Cir. 2009) (internal quotation marks omitted). The purpose of the factual basis requirement is not to "replicate the trial [the parties] entered a plea agreement to avoid," *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988), but to "ensure that the defendant is not mistaken about whether the conduct he admits to satisfies the elements of the offense charged," *Mancinas-Flores*, 588 F.3d at 682. Here, De Morais admitted to "pay[ing] bank employees to fabricate 'Verification of Deposit' forms" as part of his work for Pan American, Weber Decl. ¶ 6, and his restitution order identifies Bank of America as the payee and victim of his misconduct, Dkt. No. 48 at 4. In

light of these facts, even assuming that De Morais did not himself violate section 656, I find it reasonably probable that he could have entered a proper plea to conspiring with or aiding and abetting someone who did.

Moreover, even if a plea to section 656 proved impossible, there may have been other offenses to which De Morais could have pled that would have reduced the likelihood of his removal.[11] The government would have had a real incentive to reach agreement with De Morais given his willingness and ability to provide valuable cooperation in the ongoing investigation of Pan American and other white collar crimes. De Morais ended up providing substantial assistance in those cases, earning the commendation of Judge Ware at sentencing. *See* Sent. Tr. 18, 23. With his potential cooperation as a bargaining chip, it is reasonably probable that De Morais could have worked with the government to fashion some plea deal that was more immigration-safe than a plea to mail fraud. *See Song*, 2011 WL 2533184, at *4 (finding it reasonably probable that government would have been willing to work with petitioner to formulate a more immigration-safe plea where petitioner "possessed information helpful to the prosecution at the time of entering into his plea deal"). This conclusion is bolstered by the government's recognition at sentencing of the importance of De Morais's cooperation, by its recommendation that he receive a sentence far less harsh than the maximum allowed by 18 U.S.C. § 1341, Sent. Tr. 5, and by the total lack of any indication in the record that the government intended through the plea deal that De Morais be removed. The risk of removal that De Morais now faces is simply a by-product of the crime to which he pleaded – there is no indication that the government intended that result..

In sum, De Morais has adequately demonstrated that he received objectively deficient representation and that there is a reasonable probability that "the outcome of [his] plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384.

---

[11] De Morais contends that "when the parties are informed and motivated, there are always opportunities for defense counsel to 'plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation.'" *Id.* (quoting *Padilla*, 559 U.S. at 373). Whether or not this is *always* the case, given the potential value of De Morais's cooperation and the government's apparent indifference towards his immigration status, it appears reasonably probable here that the government would have agreed to *some* more immigration-safe plea deal – whether involving section 656 or another statute – had De Morais demanded it in exchange for his assistance.

15

## II. THE GOVERNMENT'S MOTION FOR ORDER FINDING WAIVER

In conjunction with its opposition, the government submitted a Motion for Order Finding Waiver of Privilege and Allowing Defense Counsel to Provide Declaration and Documents. Dkt. No. 71. The government asks that in the event I do not deny De Morais's motion to vacate based on the current record, I "make a finding of waiver of attorney-client privilege in order to allow the United States to obtain statements from De Morais's previous counsel [ – i.e., Levine – ] so as to contest the issue of whether [his] performance was deficient." Dkt. No. 71 at 1. Specifically, the government seeks to use the finding of waiver to obtain information otherwise protected by the attorney-client privilege regarding communications between Levine and De Morais with respect to the following subjects:

> (1) "The possible immigration consequences of any particular course of action, including Mr. Levine's communications with Stephen Eckdish and Mr. Levine's own research regarding the immigration consequences of any particular course of action."
>
> (2) "Mr. Levine's assessment of the likely consequences of proceeding to trial."
>
> (3) "Possible non-felony or non-aggravated felony dispositions that Mr. Levine might be able to get the government to agree to, and their possible immigration consequences."
>
> (4) "The calculation of . . . loss amount and restitution, and the immigration consequences of those calculations."
>
> (5) "The pros and cons of proceeding to trial, the pros and cons of negotiating a plea agreement, and De Morais' inclination (or disinclination) to proceed to trial."
>
> (6) "Judge Ware's sentence and the merits of an appeal."

Dkt. No. 71 at 3. The government also requests that Levine "be allowed to provide the United States with any correspondence, notes, or other materials in his possession" that relate to any of these six issues.[12] *Id.*

---

[12] The government admits that De Morais's current counsel has already provided the government with "correspondence and notes" from Levine's file. Dkt. No. 71 at 3-4. Further, De Morais's current counsel asserts, and the government does not dispute, that he has already provided the government with the entire contents of Levine's file, with the exception of documents that are already part of the record in this Court "and thus necessarily within the government's possession." Dkt. No. 77 at 1 n.1; Kutchins Decl. ¶ 5 (Dkt. No. 79). For these reasons, it is unclear what "correspondence, notes, or other materials" the government hopes to obtain from Levine.

16

This motion is DENIED WITHOUT PREJUDICE. The government is correct that a habeas petitioner alleging ineffective assistance of counsel "waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer." *Bittaker v. Woodford*, 331 F.3d 715, 716 (9th Cir. 2003). But the scope of this waiver is more limited than the government makes it out to be. It extends only "to the extent necessary to give [the opposing party] a fair opportunity to defend against [the particular claim at issue]." *Id.* at 720. Accordingly, where a habeas petitioner brings an ineffective assistance of counsel claim, "[t]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Id.* The waiver must be "closely tailored to the . . . needs of the opposing party in litigating the claim in question." *Id.* In addition, it must be governed by a narrowly drawn protective order or other appropriate order "clearly delineating the contours of the limited waiver." *Id.* at 728.

Following these principles, courts in this circuit faced with requests similar to the government's here have found that "the waiver issue cannot be decided outside the context of specific requests for discovery." *United States v. Kalfsbeek*, No. 05-00128, 2013 WL 129409, at *2 (E.D. Cal. Jan. 9, 2013); *see also United States v. Sewell*, No. 05-00554, 2012 WL 1928727, at *1 (E.D. Cal. May 25, 2012). This context-specific approach makes sense given that, "[i]n section 2255 proceedings, a party is not automatically entitled to discovery." *Kalfsbeek*, 2013 WL 129409, at *2. Rather, Rule 6 of the Rules Governing Section 2255 Proceedings require a party requesting discovery to establish "good cause" and to "provide reasons" for the request, and to "include any proposed interrogatories and requests for admission [and] specify any requested documents." Rule 6, Rules Governing Section 2255 Proceedings. Rule 6 also provides that "[i]f the government is granted leave to take a deposition, the judge may require the government to pay the travel expenses, subsistence expenses, and fees of the moving party's attorney to attend the deposition." *Id.*

If the government wants to depose Levine or obtain other specific discovery from him, it "must submit a request for discovery complying with Rule 6 of the Rules Governing Section 2255

proceedings." *Sewell*, 2012 WL 1928727, at *1. It should serve and file one no later than June 5, 2015. De Morais may file any objections by June 15, 2015. In addition, if either party believes that the record in this proceeding is otherwise incomplete, it shall identify any further evidence that I should consider by June 5, 2015. If either party makes such a filing, the opposing party shall respond by June 15, 2015.

## NEXT STEPS

On June 25, 2015 at 1:30 p.m., I will hold oral argument to discuss the government's requests for discovery, if any, and whether I should set an evidentiary hearing or otherwise consider additional evidence, or whether this matter may be decided without further expansion of the record.

**IT IS SO ORDERED**.

Dated: May 15, 2015



WILLIAM H. ORRICK
United States District Judge

18